# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SHERRY D. MOSER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 09-2241-JWL |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error as alleged by Plaintiff, the court ORDERS that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

**I.     Background**

Plaintiff applied for DIB and SSI on May 1, 2006 alleging disability since April 16, 2006. (R. 17, 63-67, 404-09). The applications were denied initially and upon

reconsideration, and Plaintiff requested a hearing before an administrative law judge (ALJ).[1]  (R. 17, 25-27, 30-34, 36-40, 41).  Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ James S. Stubbs on October 8, 2008.  Id., at 17, 411.  At the hearing, testimony was taken from Plaintiff, from a medical expert, and from a vocational expert.  Id., at 17, 411-53.

On October 22, 2008, ALJ Stubbs issued a decision in which he found that although Plaintiff is unable to perform her past relevant work, there are jobs that exist in significant numbers in the economy that she is able to perform.  Id., 17-24.  Therefore, he concluded Plaintiff is not disabled within the meaning of the Act, and denied her applications.  Id., at 24.

Plaintiff sought and was denied Appeals Council review of the decision.  Id., at 8-12.  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 16 A); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied

---

[1] The ALJ stated the applications were denied, both initially and on reconsideration, on February 13, 2007.  (R. 17).  However, the record reveals the applications were denied initially on August 8, 2006, and on reconsideration on February 13, 2007.  (R. 30-34, 36-40).

the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d). The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2008); Allen v. Barnhart, 357

F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment, and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Id. at 750-51. If a claimant's impairments do not meet or equal a listed impairment, the Commissioner assesses her residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform her past relevant work, and whether, when considering vocational factors of age, education, and work experience, she is able to perform other work in the economy. Williams, 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show jobs in the national economy within Plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in considering the credibility of Plaintiff's allegations of symptoms, in weighing the opinion of her treating physician, and in

evaluating Plaintiff's obesity, and consequently presented an erroneous hypothetical question to the vocational expert. The Commissioner argues that substantial evidence supports both the credibility determination and the evaluation of the treating physician's opinion, that the ALJ properly considered Plaintiff's obesity, and that the hypothetical question propounded to the vocational expert properly included only limitations which are based upon substantial evidence in the record as a whole. The court considers each issue in the order presented by Plaintiff, and finds no error in the ALJ's decision.

## III.    Credibility Determination

The ALJ summarized the record evidence, the medical opinions, and Plaintiff's allegations of symptoms resulting from her impairments in his analyses regarding steps two and three, and in his RFC assessment. (R. 19-22). He concluded that Plaintiff's allegations of symptoms are not fully credible, but that she is capable of the RFC assessed, and stated his rationale for that finding. He noted: (1) "Although [Plaintiff's degenerative disc disease and possible left-sided radiculopathy is] a significant condition, the claimant displayed few physical limitations during follow-up examinations." (R. 20). (2) Plaintiff's depression is "effectively managed with prescribed medication," and she "has not always been compliant with her medications." (R. 20). (3) Plaintiff is able to live independently. (4) She is able to take care of her four children. She (5) cooks meals and (6) performs household chores. And, (7) her work history indicates low motivation to work. Id., at 22.

### A.    Standard for Evaluating Credibility

The Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Gatson v. Bowen, 838 F.2d 442, 447 (10th Cir. 1988). Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment, Luna v. Bowen, 834 F.2d 161, 163 (10th Cir. 1987) (citing Frey [v. Bowen], 816 F.2d [508,] 515 [(10th Cir. 1987)]; Nieto v. Heckler, 750 F.2d 59 (10th Cir. 1984)), that could reasonably be expected to produce the alleged disabling pain. Luna, 834 F.2d at 163; 42 U.S.C. § 423(d)(5)(A). This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling. Musgrave v. Sullivan, 966 F.2d 1371, 1375-76 (10th Cir. 1992) (citing Luna, 834 F.2d at 163-64).

Thompson, 987 F.2d at 1488.

In evaluating symptoms, the Tenth Circuit has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66. These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489. The Commissioner has promulgated regulations suggesting relevant factors to be

considered in evaluating credibility which overlap and expand upon the factors stated by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i-vii); 416.929(c)(3)(i-vii).

Credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990). They "are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005). Therefore, in reviewing an ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994). "A finding of 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992)(quoting Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Hackett, 395 F.3d at 1173(quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)).

### B. The Parties' Arguments

Plaintiff summarized the standard applicable to credibility determination, and argued that the evidence does not support the ALJ's findings: (1) that Plaintiff displayed few physical limitations during follow-up examinations and (2) that Plaintiff's depression was effectively managed with prescription medication and she was not always medication compliant. (Pl. Br. 14-17). She argued that findings (3-6) are merely "minimal daily activities" upon which an ALJ may not rely to discount Plaintiff's allegations. Id. at 17-18. Plaintiff argued this case "is strikingly similar to" Piatt v. Barnhart, 225 F. Supp. 2d 1278 (D. Kan. 2002) in which Judge Robinson remanded for further proceedings, and that in making his credibility determination "the ALJ clearly did not consider Moser's testimony at all." Id. at 18. The Commissioner argued that the ALJ adequately discussed his credibility findings, that substantial evidence in the record supports each finding, and that the findings must, therefore, be affirmed. (Comm'r Br. 4-10).

### C.     Analysis

Contrary to Plaintiff's assertion, the ALJ was correct to note that Plaintiff displayed few physical limitations during follow-up examinations. Plaintiff cites to evidence which shows that she has disc narrowing at L5-S1, degenerative disc disease, possible left sided radiculopathy, difficulty with heel and toe walking, squatting, hopping, and rising from a seated position, and a slow, wide gait with tenderness to palpation over the deep buttock, and pain with resisted internal rotation of her leg. (Pl. Br. 15-16)(citing (R. 184, 222, 226)). However, Plaintiff must show more than the presence of an

impairment that could cause the symptoms, she must show that the evidence as a whole demonstrates her limitations are as severe as alleged.

The ALJ acknowledged that Plaintiff's degenerative disc disease is a "significant condition." (R. 20). Moreover, the evidence to which Plaintiff cites reveals "few physical limitations" just as found by the ALJ. The November 16, 2006 Kansas University Orthopedic Surgery Clinic progress note to which Plaintiff cites includes a "Physical Examination" section which states as follows:

> On examination of Ms. Moser, her height today is 5 feet 4 inches. She is 291 pounds. She is pleasant and cooperative with the history and physical examination. She appears to be in no acute distress. Examination of her back reveals her to be slightly tender to palpation around her left SI area and into her left buttock. She has minimal tenderness throughout her lumbar spine, particularly on the right side. Motor strength reveals her to have 5/5 strength with the exception of approximately 4+/5 on her EHL and dorsiflexion on her left side, although she has had recent injections and had some pain in this area with strength testing. Reflexes. are 2+ and symmetric and bilaterally. Downgoing Babinski bilaterally. No clonus is appreciated bilaterally. She has negative straight leg raises bilaterally as well. She has somewhat limited range of motion with regards to her lumbar spine.

(R. 222). The court need not even defer to the ALJ to find that this examination reveals "few physical limitations."

Similarly, Dr. Pickett's report of examination reveals some limitations, but states Plaintiff can bend 24 inches to the floor, gait and station are stable, no assistive device is needed, there is only <u>mild</u> difficulty with orthopedic maneuvers, and "no asymmetrical reflex, sensory or motor deficit noted today." (R. 185). Finally, as Plaintiff asserted, on September 25, 2006 Dr. Noland noted that Plaintiff had a slow, wide gait, tenderness to

palpation over the deep buttock, and pain with resisted internal rotation of her leg. (R. 226). However, Dr. Noland also noted Plaintiff's gait was stable, she had full active and passive range of motion in her left hip and the hip flexor strength was 5/5. Id. Giving the ALJ's finding the deference it is due, the evidence supports his finding that Plaintiff displayed few physical limitations on follow-up examinations.

Plaintiff's argument regarding effective management of depression and medication compliance is a far closer determination. As Plaintiff asserted, she received considerable treatment for her depression and had numerous documented symptoms when she sought treatment. Her documented symptoms were: feelings of isolation, crying, suicidal ideation, feelings of hopelessness, anxiety, anger, desire to hurt someone, and feeling overwhelmed. (Pl. Br. 16-17).

As Plaintiff argued, symptoms from her mental impairment are significant. The ALJ accepted that. (R. 20). He noted that on the other hand, the state agency medical consultants had determined Plaintiff's mental impairments were not even "severe" within the meaning of the Act. Id. He found nonetheless, that depression is "severe" in this case (R. 19), and assessed moderate limitations in seven out of twenty mental functional areas. (R. 21). He noted that Plaintiff "has not always been compliant with her medications," and determined that her depression has been effectively managed. (R. 20).

Though the court may have reached a different conclusion had it made the decision de novo, it finds no error in the ALJ's determination. A review of the psychological treatment records as a whole supports the determination. Many times, the records reveal

Plaintiff has not been compliant with medications, as the ALJ found. (R. 264, 265, 267, 268, 270, 275, 277, 289, 318, 383, 388). Although Plaintiff's medications were occasionally changed, there is little indication in the record (other than through noncompliance) that the medications were ineffective. Many times, the records reveal that Plaintiff's medications were merely continued. (R. 257, 261, 265, 268, 270, 289, 296, 322, 379, 382, 383, 391, 392, 397, 400). A couple of times however, the psychiatrist indicated he was going to refer Plaintiff for inpatient psychiatric hospitalization. (R. 268, 270). But, as the medical expert testified, and as the ALJ noted, Plaintiff was never hospitalized. (R. 20, 22) . In one instance, the records indicate that Plaintiff was "diverted" from psychiatric hospitalization because Plaintiff was able to and did contract not to hurt herself or others. (R. 269). Finally, the medical expert testified that despite inconsistent attendance at treatment and inconsistent compliance with medication, Plaintiff "has had some improvement in symptomatology." (R. 445). He believed Plaintiff's limitations were more due to physical rather than mental limitations, and assigned the seven moderate mental limitations later assessed by the ALJ. (R. 446-47). In the circumstances, the ALJ made a reasonable finding, supported by substantial evidence in the record, that Plaintiff's mental condition "has been helped with medication" (R. 22), and has been "effectively managed with prescribed medication" (R. 20), and that Plaintiff "has not always been compliant" with her medications. (R. 20, 22).

Plaintiff's argument that she missed several appointments and ran out of medications because she could not afford refills, does not require a different conclusion.

The March 20, 2007 progress note to which Plaintiff cites reveals that Plaintiff's Medikan insurance was discontinued a month earlier and she ran out of medication because "she could not afford her refills <u>and did not call the center for samples</u>." (R. 388)(emphasis added). The "Treatment Plan" concluded, "Plan to restart same meds, she was educated about importance of compliance with meds and followup with her therapist." <u>Id.</u> A fair reading of this note suggests that Plaintiff has been informed that if she cannot afford her medications, the center will provide samples so that she can maintain compliance. Further, a May 19, 2006 progress note states that Plaintiff lost her job and had not taken her antidepressant for two weeks. (R. 277). That note also concluded, "Plan is to restart her antidepressant as ordered. Educated her for need for med compliance." <u>Id.</u> Therefore, there is evidence from which the ALJ properly concluded that Plaintiff was aware of the center's willingness to provide free medication, and Plaintiff's failure to follow the prescribed treatment was without justifiable excuse. (R. 22)(citing <u>Roth v. Shalala</u>, 45 F.3d 279, 282 (8th Cir. 1995); and 20 C.F.R. §§ 405.1530, 416.930).

The court also finds the decision in <u>Piatt</u> compelling, as Plaintiff suggests. Therefore, with regard to the ALJ's determination that (3) Plaintiff is able to live independently, (4) is able to take care of her four children, and (5) cooks meals and (6) performs household chores, the court agrees that "Such limited and sporadic performance of daily activities does not negate the possibility of disability." <u>Piatt</u>, 225 F. Supp. 2d at 1291. Despite that finding, the <u>Piatt</u> court also found that "the ALJ did not err

in concluding that Plaintiff's subjective claims of pain were not entirely credible." Piatt, 225 F. Supp. 2d at 1293. The court explained:

> Although the ALJ must consider plaintiff's subjective complaints, the ALJ does not have to accept them as true. A credibility determination is left to the ALJ as the trier of fact, and the ALJ's credibility findings are traditionally given particular deference. The ALJ's credibility findings must be affirmed if they are supported by substantial evidence on the record as a whole. Because there was some basis in the record for the ALJ to disbelieve Plaintiff's claims of pain, the Court defers to the ALJ's conclusion in that regard. Unless there is a conspicuous absence of credible evidence to support the ALJ's conclusion, which there is not, the Court should treat the ALJ's credibility determination as binding upon review.

Id., 225 F. Supp. 2d at 1292(citations omitted). This rationale is also applicable here.

Here, although Plaintiff argued that the ALJ did not consider her testimony at all in his credibility analysis, the decision does not support that argument. The ALJ specifically summarized and discussed Plaintiff's allegations in his step two analysis (R. 19-20) and in his RFC analysis. (R. 21-22). As the court noted in Piatt, an ALJ need not accept Plaintiff's allegations as true. And, as discussed above, the ALJ's credibility findings are supported by substantial evidence on the record as a whole. Moreover, Plaintiff does not even attempt to distinguish the ALJ's additional determination that her work history shows a lack of motivation to work. There is no conspicuous absence of credible evidence to support the ALJ's credibility finding, and the court shall treat the finding as binding upon review.

**IV.     Evaluation of Plaintiff's Treating Physician's Opinion**

-13-

The ALJ noted that Plaintiff's treating physician, Dr. Huet-Vaughn, opined in early 2008 that Plaintiff's low back pain was incapacitating at times, and that Plaintiff was currently unable to work. (R. 20)(citing Ex. 6F at 2(R. 230)). He stated that Plaintiff's treatment "typically involved simply refilling her medications," that it was unclear how Dr. Huet-Vaughn reached her conclusions, and that she provided no objective medical evidence or clinical findings to support her opinion. (R. 20).

### A. **Standard for Evaluating a Treating Source Opinion**

As Plaintiff claims, a treating physician's opinion might be accorded controlling weight, and is generally worthy of "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). It may never be ignored, and must be weighed in accordance with certain regulatory factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); accord, Goatcher v. Dep't of Health and Human Servs., 52 F.3d 288, 290 (10th Cir. 1995). "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003)(citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### B. The Parties' Arguments

Plaintiff claims that "it is clear from the record how Dr. Huet-Vaugh[2] reached her opinion," points to Plaintiff's reports and complaints in Dr. Huet-Vaughn's treatment notes, and concludes that "how Dr. Huet-Vaugh reached her opinion was clear, and her opinion should have been found persuasive." (Pl. Br. 20). She argues that the physician "had no obligation to provide objective medical evidence or separate clinical findings to support" her opinion, but that "her opinion is supported by the objective medical record compiled each time she treated Moser." Id. at 21. Finally she argues that the ALJ disregarded Dr. Huet-Vaughn's expertise and experience with Plaintiff's condition and improperly replaced Dr. Huet-Vaughn's opinion with that of the Disability Determinations Services medical consultant. Id.

The Commissioner argues that the ALJ properly considered the opinion evidence. (Comm'r Br. 11). He argues that an opinion on an issue reserved to the Commissioner is never entitled to special significance, that the ALJ explained his reasons for discounting Dr. Huet-Vaughn's opinion, that "Dr. Huet-Vaughn's treatment records documented little other than Plaintiff's subjective complaints (Comm'r Br. 11), and that there is "no indication in the record that the doctor had any expertise in vocational issues." Id., at 12.

### C. Analysis

---

[2]Plaintiff consistently refers to "Dr. Huet-Vaugh" throughout her brief, but the record reveals that the physician is "Dr. Huet-Vaughn." (R. 232).

-15-

The ALJ's observation that it is unclear how Dr. Huet-Vaughn reached her conclusions is an understatement. The totality of Dr. Huet-Vaughn's opinion at issue here was written on a prescription form, dated "3/21/08," signed, and tersely stated: "Ms. Moser has severe low back pain that is at times incapacitating. She is unable to work at this time." (R. 230). As the ALJ found, the opinion contains no explanation or citation to medical evidence or clinical findings to support the conclusions reached. Further, it does not explain at what times or under what conditions Plaintiff's low back pain is incapacitating. By stating that the low back pain is incapacitating "at times," and that Plaintiff cannot work "at this time," it implies that she will be able to return to work, and that her low back pain is not totally disabling. However, it does not provide an estimate of the length of time Plaintiff will be unable to work, or even what her prognosis is for a return to work.

Moreover, Dr. Huet-Vaughn's treatment records do not illuminate her rationale for the opinion. (R. 229-52). As Plaintiff argues, the treatment notes reflect Plaintiff's complaints and reports of low back pain, and Dr. Huet-Vaughn's documentation of Plaintiff's reports of tenderness. As the Commissioner argues, the treatment records document little more than Plaintiff's subjective complaints, and much of the treatment recorded was merely for medication refills and for treatment of conditions other than low back pain. The court's review of the treatment notes agrees with the Commissioner. Dr. Huet-Vaughn's treatment notes do not provide a basis, other than Plaintiff's subjective complaints, to find that Plaintiff is incapacitated by low back pain, and do not provide an

-16-

explanation of when Plaintiff's condition precludes work or a prognosis for improvement. Moreover, as discussed above, the ALJ properly found Plaintiff's allegations not credible, and therefore, there is no basis to fully credit her complaints to Dr. Huet-Vaughn. The ALJ provided specific, legitimate reasons for discounting Dr. Huet-Vaughn's opinion, and those reasons are supported by substantial evidence in the record.

While Plaintiff is correct to note that Dr. Huet-Vaughn has no obligation to provide medical evidence or clinical findings in support of her opinion, as discussed above an unsupported opinion is not worthy of great weight. An ALJ need not accept the unsupported opinion of even a long-time treating physician. Otherwise, a treating physician could dispense disability determinations just as she does medications.

Plaintiff's claim that the ALJ improperly replaced Dr. Huet-Vaughn's opinion with that of the medical consultant from the Disability Determination Service finds no support in the record. The Disability Determination Service (DDS) made the initial and reconsideration determinations based primarily upon Plaintiff's allegations of mental impairments, and completed a Psychiatric Review Technique Form, but no Physical RFC Assessment Form. (R. 187-200, 358, 359). Therefore, there is no specific opinion in the record from a DDS consultant regarding Plaintiff's physical abilities, and the ALJ could not have adopted a DDS consultant's opinion regarding physical RFC. Dr. Pickett, who is a medical consultant, not a DDS consultant, provided a report of examination regarding Plaintiff, but did not provide a specific RFC opinion. (R. 182-86). The ALJ properly discounted Dr. Huet-Vaughn's opinion (as discussed above), and based his physical RFC

assessment, as Soc. Sec. Ruling (SSR) 96-8p requires, upon all the relevant record evidence, including Plaintiff's testimony, the medical records (including Dr. Huet-Vaughn's treatment records), and Dr. Pickett's report of examination. (R. 18)(summarizing the standard for RFC assessment, and citing 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945; and SSR 96-8p).

## V. Evaluation of Obesity

Plaintiff claims the ALJ failed to evaluate how her obesity in combination with her musculoskeletal disorders contributes to her disability, and failed to consider or even discuss the affect of her obesity on her overall condition. The Commissioner argues that the ALJ properly considered Plaintiff's obesity in that he found she has a severe impairment of morbid obesity and her limitations are attributable to her obesity.

The court agrees that the ALJ adequately discussed and considered Plaintiff's obesity in his decision. The ALJ noted that Plaintiff is 5'3" tall, weighs over 300 pounds, and has a severe impairment of morbid obesity. (R. 19). He discussed her limitations:

> The claimant also is limited by her obesity. Objective examinations of the claimant, however, show her physical limitations to be mild to moderate, not marked or extreme. The claimant's degenerative disc disease and obesity are significant conditions, but they are not completely disabling and examinations have shown the claimant to have few actual limitations.

(R. 22). More is not required.

Plaintiff argues, however, that she uses a cane, has been prescribed a walker, and avoids going places "when there are too many stairs," and therefore her obesity has resulted in an "inability to ambulate effectively" sufficient to equal the criteria of Listing

1.02A. The regulations define "inability to ambulate effectively," as "an extreme limitation in the ability to walk . . . having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of <u>both upper extremities</u>." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.00B(2)(b)(1)(emphasis added). The regulations explain:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.00B(2)(b)(2).

In her testimony at the hearing, Plaintiff acknowledged that she carries out activities of daily living with a single cane, not a walker, even though she has been prescribed a walker. (R. 422-23). She acknowledged that she has trouble with stairs, but implied that she can climb a few stairs when she stated she won't walk them "if there's a lot of stairs." (R. 431). Her function reports indicate she is able to use public transportation, and is able to carry out activities such as shopping and going to the doctor. (R. 121, 157-58). Plaintiff has not met her burden to show that she has an "inability to

ambulate effectively" as defined in the regulations, and the ALJ properly considered and discussed her obesity.  Plaintiff has shown no error in the ALJ's decision.

Because Plaintiff has shown no error in the ALJ's credibility finding, in the evaluation of the treating source opinion, or in the consideration of obesity, she has not shown error in the hypothetical question presented to the vocational expert or, consequently, in the ALJ's reliance on the vocational expert's testimony.  Therefore, the court finds Plaintiff has shown no error in the Commissioner's decision.

**IT IS THEREFORE ORDERED** that the judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 14th  day of September 2010, at Kansas City, Kansas.

                s/ John W. Lungstrum
                **John W. Lungstrum**
                **United States District Judge**